IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Debra Feaster, ) | |
| ) | Civil Action No. 2:13-cv-02517-DCN-JDA |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Federal Express Corporation, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court on Defendant's motions for partial dismissal and for summary judgment. [Docs. 5, 37.] Plaintiff brings this case pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and 42 U.S.C. § 1981. Pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(A) and Local Civil Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

On August 8, 2013, Plaintiff, an African-American female who is over the age of 40, filed this action in the Court of Common Pleas for Charleston County, South Carolina, generally alleging discrimination and hostile work environment claims based on race, sex, and age. [Doc. 1-1.] On September 16, 2013, Defendant removed the action to this Court, and then filed an answer and a motion for partial dismissal on September 23, 2013. [Docs. 1, 5, 6.] Plaintiff filed a response in opposition to the motion for partial dismissal on October 14, 2013. [Doc. 15.] On May 12, 2014, Defendant filed a motion for summary judgment. [Doc. 37.] Plaintiff filed a response in opposition and additional attachments on

June 14, 2014 [Docs. 46, 47], and Defendant filed a reply on July 1, 2014 [Doc. 52]. Accordingly, the motions are ripe for review.

## BACKGROUND

**Plaintiff's Work History with Defendant**

Plaintiff began working for Defendant on March 24, 1989 as a courier. [Doc. 37-3 at 4:7–8; 5: 20–24.] As a courier, Plaintiff's primary job duties were to pick up and deliver packages. [*Id.* at 13:6–9.] Plaintiff worked on the a.m. shift, which typically ran from 6:30 a.m. until 3:30 p.m. [*Id.* at 13:12–15:9.] As needed, Plaintiff worked on the p.m. shift, assisting the reload, when employees unloaded freight from FedEx trucks coming off the road. [*Id.* at 17:6–18.]

From 1997 until 2000, David Huntley supervised Plaintiff. [*Id.* at 29:20–23.] From 2000 until December 2005, Operations Manager Russ Coletti ("Coletti") supervised Plaintiff. [*Id.* at 29:13–19.] From December 2005 until August 2011, Operations Manager John Devereaux supervised Plaintiff. [*Id.* at 29:8–10.] Finally, from August 2011 until her termination, Coletti again supervised Plaintiff. [*Id.* at 28:23–29:7.]

Plaintiff was an employee at-will, and she was familiar with the policies in FedEx's Employee Handbook and People Manual that prohibited discrimination and harassment and that outlined available complaint procedures. [*Id.* at 7:14–9:25.] Plaintiff received copies of the Employee Handbook in 1989, 1993, 1996, 2002, 2006, and 2011, and she understood that she had access to the People Manual in the workplace. [*Id.* at 7:22–8:7.] In addition to FedEx's equal employment opportunity policies, Plaintiff was familiar with FedEx's Acceptable Conduct Policy. [*Id.* at 24:10–12.] That policy explains, in part, that the falsification of company records, including package delivery records, may result in

severe disciplinary action up to and including termination. [Doc. 37-4 at 59–61.] Additionally, Plaintiff received two letters, in February 2005 and November 2008, to all employees of the Southern Region, explaining and re-emphasizing that the falsification of company documents could result in termination. [Doc. 37-2 at 32–36.]

**Allegations of Hostile Work Environment**

The parties agree that the following twelve discrete actions are those Plaintiff asserts created a hostile work environment:

1. In November 2008, Coletti pressed Plaintiff's then-supervisor to discipline Plaintiff for not going on break to vote in a political election;

2. In 2008, Coletti emailed Plaintiff's supervisor inquiring about her hours;

3. Coletti "constantly" sent Plaintiff work-related messages through her Powerpad[1];

4. Plaintiff's overtime hours were reduced beginning in August 2011;

5. A political sign advertising Coletti's candidacy for City Council was placed in her yard in September 2011;

6. During one of Coletti's team meetings in September 2011, he asked Plaintiff to not take packages and freight designated for other couriers' routes;

7. During another one of Coletti's team meetings at some point between August 2011 and February 2012, a meeting to which Plaintiff was late, Coletti inquired about Plaintiff's whereabouts;

---

[1] The Powerpad is a device that couriers have customers sign when they receive their packages. [Doc. 47-8 at 8.] It keeps track of the stops couriers run so that FedEx's records would show how many stops were delivered and the times they were delivered or attempted to be delivered. [*Id.*]

8. In August 2011, Coletti instructed Plaintiff not to bring the FedEx truck to her house after she finished her a.m. shift and before she started her p.m. shift, approximately a two hour gap;

9. In December 2011, Plaintiff received an OLCC[2] for having 38 late package deliveries in a two-week period and ten late deliveries in one day;

10. In December 2011, Plaintiff received an OLCC for not meeting her performance goals over the prior six months;

11. Coletti asked Plaintiff about her work hours in December 2011; and

12. Coletti instructed a Customer Service Agent to monitor Plaintiff's performance in January 2012.

[Doc. 37-1 at 10–14; *see also* Doc. 46 at 35 (noting that "[e]ach of the actions stated by the Defendant are the actions that Plaintiff contends that she was subjected to hostile work environment)].

**Plaintiff's Termination**

In November 2011, FedEx received a complaint from a residential customer who was waiting for a package from Dell Computers. [Doc. 37-2 ¶ 10; Doc. 37-4 at 16:24–17:16.] The customer stated that he was outside of his house on the telephone with Dell inquiring as to the whereabouts of his package at the same time that FedEx's tracking system reflected the delivery of the package by Plaintiff. [Doc. 37-2 ¶ 10.] The customer explained that he did not receive the package at that time; rather, he received it two hours

---

[2]An OLCC is an Online Compliment or Complaint, which is used to recognize employees for something they've done well or notify employees of something they on which they need to work. [Doc. 47-8 at 4.] An OLCC is not discipline. [*Id.*]

4

later. [*Id.*] Coletti confronted Plaintiff about this customer complaint. [*Id.*; Doc. 37-4 at 17:20–22.] Plaintiff admitted that she falsified the records for the delivery of this package. [Doc. 37-4 at 17:17–19.]

In February 2012, FedEx received a complaint from a law firm relating to two packages supposedly delivered by Plaintiff to the law firm's office on that particular morning. [Doc. 37-2 ¶ 11; Doc. 37-4 at 17:23–18:25.] FedEx's tracking data on these two packages showed that Plaintiff entered a "residential release," meaning the customer waived signature, and the courier would leave the package at the front door of the residence. [Doc. 37-2 ¶ 11.] The law firm was upset because the packages were not received and they contained confidential and privileged information. [*Id.*] The customer also wanted an explanation as to why the packages' tracking data reflected a residential release for a business location. [*Id.*] Plaintiff also admitted that she falsified the records for the delivery of this package. [Doc. 37-4 at 19:1–3.]

As a result of these customer complaints, Coletti initiated an investigation into Plaintiff's suspected falsification. [Doc. 37-2 ¶ 12.] As part of the investigation, Coletti reviewed Plaintiff delivery records on randomly selected days between November 14, 2011, the date of the first complaint, and February 17, 2012, the date of the second complaint. [*Id.*] This investigation revealed a systematic pattern of falsification by Plaintiff during that timeframe. [*Id.*] The delivery data reflected falsification of delivery records on at least eight occasions during the investigation period to meet delivery time obligations by recording deliveries at the same or nearly identical times but to different physical locations. [*Id.* ¶¶ 13–15.] Additionally, the investigation demonstrated that Plaintiff misused delivery exception codes, which are used by couriers to record an inability to deliver a package or

an exception to the normal delivery protocols,[3] on at least sixteen occasions during the investigation period to increase her stop-count and improve her on-road performance and efficiency. [*Id.* ¶ 16–19.]

Coletti confronted Plaintiff about her misconduct and gave her a chance to explain her behavior, but she chose not to offer an explanation. [Doc. 37-2 ¶ 20; Doc. 37-4 at 15:10–16:7.] Coletti suspended Plaintiff with pay on February 22, 2012 so that he could complete his investigation. [Doc. 37-2 ¶ 21; Doc. 37-4 at 70.] Once the investigation was complete, Plaintiff was terminated on February 27, 2012 for the deliberate falsification of delivery records. [Doc. 37-4 at 68–71.] Plaintiff concedes that she falsified delivery records from twenty to fifty times. [*Id.* at 19:4–17.] Plaintiff also concedes that Coletti truly believed that she had falsified the delivery records. [*Id.* at 13–15.] Additionally, Plaintiff was aware of other employees who were terminated for falsification. [*Id.* at 19:18–20:25.]

Plaintiff appealed the termination decision through all three levels of FedEx's internal grievance procedure, known as the "Guaranteed Fair Treatment Procedure." [*Id.* at 37:5–41:10.] The decision to terminate her employment was reviewed independently at all three levels, and the decision was affirmed at each level. [*Id.*]

---

[3]By way of example, if a courier is unable to deliver a package because the customer is not home, the courier enters the delivery exception code "DEX 08." [Doc. 37-2 ¶ 16.] If the package contains a "residential release," the Courier enters a delivery exception code "DEX 02," and then leaves the package at the front door of the residence. [*Id.*]

## APPLICABLE LAW

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support her claim and entitle her to relief. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

7

> Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Motion for Partial Dismissal**

In its motion for partial dismissal, Defendant argues portions of Plaintiff's Complaint must be dismissed because (1) Plaintiff failed to exhaust administrative remedies with respect to certain claims and (2) even if she had exhausted administrative remedies, she failed to state a claim upon which relief can be granted with respect to certain claims.[4]

---

[4] In its motion to dismiss, Defendant has construed Plaintiff's Complaint as alleging five distinct claims, all allegedly based on race pursuant to § 1981 and Title VII, sex pursuant to Title VII, and age pursuant to the ADEA: (1) a hostile work environment claim; (2) a discrimination claim with respect to discipline; (3) a discrimination claim with respect to a reduction of hours worked; (4) a discrimination claim with respect to the terms and conditions of her employment; and (5) a discrimination claim with respect to her termination. [Doc. 5-1 at 2.]

[Doc. 5-1.] Specifically, Defendant alleges Plaintiff's hostile work environment claim and discrimination claims related to treatment before her termination must be dismissed under Title VII and the ADEA because Plaintiff failed to include these allegations in her Charge of Discrimination with the EEOC. [*Id.* at 3–4.] Accordingly, Defendant alleges the only claim Plaintiff can bring under Title VII and the ADEA in this Court is her discrimination claim related to her termination. Further, Defendant alleges Plaintiff has failed to state a claim upon which relief can be granted under § 1981, Title VII, and the ADEA with respect to her hostile work environment claim and her discrimination claims related to discipline, reduction of hours, and terms and conditions of employment. [*Id.* at 4–10.] In her responses in opposition, Plaintiff has clarified that she is bringing her hostile work environment claim only under § 1981, which does not require exhaustion of administrative remedies [Doc. 15 at 2; Doc. 46 at 31] and that her discrimination claim is limited to allegations regarding her termination [Doc. 46 at 40]. Accordingly, with respect to Defendant's motion to dismiss, the only remaining argument is that Plaintiff has failed to state a claim upon which relief can be granted under § 1981 related to her hostile work environment claim. However, at this stage, Defendant has also addressed Plaintiff's hostile work environment claim in its motion for summary judgment; accordingly, out of an abundance of caution, the Court will address the claim on the merits.

**Motion for Summary Judgment**

### *Discrimination Claim*

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

In 1991, Congress amended Title VII to include that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* § 2000e-2(m).  Section 1981 outlaws race discrimination in the making and enforcement of private contracts.  The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

As the Fourth Circuit Court of Appeals has explained in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff[5] may "avert summary judgment . . . through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004).  First, a plaintiff may survive a motion for summary judgment "by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).  The Fourth Circuit defines "direct evidence" as evidence that the employer "announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor . . . ." *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982) (citing *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1113 (4th Cir. 1981)).  In other words, direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps*, 67

---

[5]Section 1981 claims are subject to the same analysis as Title VII claims. *Thompson v. Potomac Electric Power Co.*, 312 F.3d 645, 649 n.1 (4th Cir. 2002).

F.3d 1137, 1142 (4th Cir. 1995), *abrogated on other grounds by Desert Palace*, 539 U.S. 90. Circumstantial evidence may "includ[e] but [is] not limited to proof of the claimant's general qualifications, from which the inference of . . . discrimination may rationally be drawn independently of any presumption [of discrimination]." *Cline*, 689 F.2d at 485 (footnote omitted). To demonstrate an unlawful employment practice in these so-called mixed-motive cases, a plaintiff "need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence," that the impermissible factor was a motivating factor, i.e., "direct evidence of discrimination is not required in mixed-motive cases." *Desert Palace*, 539 U.S. at 101–02.

Alternatively, a plaintiff may proceed under the *McDonnell Douglas* "pretext" framework.[6] *Id.* (quoting *Hill*, 354 F.3d at 285). Under this framework, an employee must first prove a prima facie case of discrimination.[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action.

---

[6]The ADEA does not provide that a plaintiff may establish discrimination by showing age was simply a motivating factor in an employment decision. The ordinary meaning of the ADEA's requirement that an employer took adverse action "because of" age is that age was the "reason" that the employer decided to act; accordingly, under the ADEA, a plaintiff must prove age was the "but-for" cause of the employer's adverse decision. *Gross v. FBL Fin. Svcs., Inc.*, 557 U.S. 167 (2009). Although the Supreme Court has left undecided whether the *McDonnell Douglas* framework applies in an ADEA case, *id.* at 2351 n. 4, the Fourth Circuit has generally applied the *McDonnell Douglas* framework to ADEA cases, *see, e.g., Hill*, 354 F.3d 277 (applying *McDonnell Douglas* framework to ADEA case).

[7] To establish a prima facie case of discrimination, a plaintiff must demonstrate (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action; and (4) other employees who are not members of the protected class did not suffer the adverse employment action under similar circumstances. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002); *see also EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 851 n.2 (4th Cir. 2001) ("What is critical with respect to the fourth element is that the plaintiff demonstrate he was not hired (or fired or not promoted, etc.) 'under circumstances which give rise to an inference of unlawful discrimination.'" (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981))).

*Id.* By providing such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and "[t]he presumption, having fulfilled its role of forcing the [employer] to come forward with some response, simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11 (1993) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). If the employer articulates a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the articulated reason was actually a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804.

However, the Fourth Circuit has emphasized that, "[r]egardless of the type of evidence offered by a plaintiff as support for her discrimination claim (direct, circumstantial, or evidence of pretext), or whether she proceeds under a mixed-motive or single-motive theory, '[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Hill*, 354 F.3d at 286 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)). Further, the court stated,

> To demonstrate such an intent to discriminate on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that "the protected trait . . . actually motivated the employer's decision." *Reeves*, 530 U.S. at 141, 120 S.Ct. 2097 (internal quotation marks omitted). The protected trait "must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Id.* (internal quotation marks and alterations omitted); *cf. Price Waterhouse* [*v. Hopkins*], 490 U.S. [228,] 277, 109 S. Ct. 1775 (O'Connor, J., concurring) (noting that "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden" of proving discrimination); *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 678

>    (7th Cir. 2002) (noting that the pertinent inquiry is whether the decision maker, as opposed to other managers or subordinates, evaluated the aggrieved employee based upon discriminatory criteria).

*Id.* Thus, whether a plaintiff proceeds under the first or second avenue of proof, the plaintiff's ultimate burden is to demonstrate the employer's adverse employment action was motivated, at least in part, by discrimination.

Here, Plaintiff concedes that her discrimination claim is limited to allegations regarding her termination. [Doc. 46 at 40.] Accordingly, in this case, the Court must determine whether Plaintiff has demonstrated a genuine issue of material fact remains as to whether her termination was motivated, at least in part, by race, sex, and age discrimination. Defendant contends Plaintiff cannot establish a prima facie case of discrimination. [Doc. 37-1 at 26–30.] Moreover, Defendant argues it had a legitimate, nondiscriminatory reason to terminate Plaintiff. [*Id.* at 30–31.]

Even assuming without deciding Plaintiff can establish a prima facie case of discrimination,[8] the Court agrees Defendant articulated a legitimate, nondiscriminatory

---

[8]As one court within the Fourth Circuit has noted, "[t]he relevance of the *McDonnell Douglas* scheme outside of the trial context is limited." *Lerner v. Shinseki*, No. ELH-10-1109, 2011 WL 2414967, at *14 (D. Md. June 10, 2011). The Fourth Circuit has observed,

>    Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of "the ultimate question of discrimination *vel non.*" *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). As the Supreme Court has explained, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Thus, "[c]ourts must . . . resist the temptation to become so entwined in the intricacies of the [ *McDonnell Douglas* ] proof scheme that they forget that the scheme exists solely to facilitate determination of 'the ultimate question of discrimination *vel non.*' " *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) (citation omitted).

reason for terminating Plaintiff, and Plaintiff has failed to establish a genuine issue of material fact remains as to whether the articulated reason is pretext for unlawful discrimination.

Defendant argues Plaintiff was terminated for deliberate falsification of delivery records. Plaintiff admits that she falsified documents an estimated twenty to fifty times and admitted that Coletti believed Plaintiff falsified documents and that he terminated her because of that falsification. Based on these explanations, the Court concludes Defendant has met its burden under *McDonnell Douglas* to produce evidence from which a jury could conclude Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff. Accordingly, the Court will consider whether Plaintiff has met her burden of demonstrating that Defendant's proffered reasons are merely a pretext for discrimination, which would indicate whether Plaintiff could meet her ultimate burden of persuasion and demonstrate discrimination *vel non*. *See Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) ("The final pretext inquiry 'merges with the ultimate burden of persuading

---

*Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294–95 (4th Cir. 2010). Further, the Supreme Court has stated,

> Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

*Aikens*, 460 U.S. at 715 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) ("The *Aikens* principle applies, moreover, to summary judgment as well as trial proceedings."). In light of this guidance from the Supreme Court and the Fourth Circuit, the Court agrees with the District of Maryland that where the employer has met its burden of articulating a legitimate, nondiscriminatory reason for its adverse action against the plaintiff, the Court may assume, without deciding, that the plaintiff has established a prima facie case of discrimination. *Lerner*, 2011 WL 2414967, at *14.

the court that [the plaintiff] has been the victim of intentional discrimination,' which at all times remains with the plaintiff." (alteration in *Merritt*) (quoting *Burdine*, 450 U.S. at 256)).

To prove an employer's articulated reason is a pretext for discrimination, a plaintiff "must prove '*both* that the reason was false, *and* that discrimination was the real reason' for the challenged conduct." *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515). When determining whether an articulated reason is pretextual, "[i]t is the perception of the decision maker which is relevant." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 445 (4th Cir. 1998), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). Upon review of the record, the Court determines Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendant's proffered reason for terminating Plaintiff are merely a pretext for discrimination.

In her response in opposition to the motion for summary judgment, Plaintiff focuses her argument on establishing a prima facie case of discrimination but fails to argue that Defendant's proffered reason for terminating Plaintiff is merely a pretext for discrimination. Plaintiff has failed to produce evidence that Defendant did not believe Plaintiff was falsifying documents and, indeed, admits that she falsified documents and that Coletti terminated her

because of that falsification.[9]  Accordingly, summary judgment should be granted on Plaintiff's discrimination claim.

### *Hostile Work Environment Claim*

Title VII also prohibits creating or allowing a hostile work environment based on race, color, religion, sex, or national origin.[10]  *See Baqir v. Principi*, 434 F.3d 733, 746 n. 14 (4th Cir. 2006).  To prove a hostile work environment, the plaintiff must show that: (1) he was harassed because of his race; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer.  *Gilliam v. South Carolina Department of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007); *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc).

In *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the Supreme Court reaffirmed its previously articulated standard for determining when a plaintiff has established a hostile work environment, stating that a plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."

---

[9]To the extent Plaintiff argues pretext based on the fact that she alleges Coletti taught her how to falsify delivery records in 2000, such argument fails.  [*See* Doc. 46 at 44.]  Even if Coletti taught Plaintiff to falsify delivery records in 2000, Plaintiff was familiar with FedEx's Acceptable Use Policy, which explains that the falsification of company records, including package delivery records, may result in severe disciplinary action up to and including termination, and Plaintiff received two letters, in 2005 and 2008, explaining and re-emphasizing that the falsification of company documents could result in termination.  *See Rouse v. FedEx.*, No. 4:10-cv-2275-RBH, 2012 WL 3157007, at *5 (D.S.C. Aug. 3, 2012) ("Given Plaintiff's own admissions of guilt, his agreement that punishment was warranted, and his inability to provide reliable evidence that falsifying documents was encouraged in spite of Defendant's explicit written policy, Plaintiff has failed to establish pretext as a matter of law.")..

[10]As previously stated, Section 1981 claims are subject to the same analysis as Title VII claims. *Thompson v. Potomac Electric Power Co.*, 312 F.3d 645, 649 n.1 (4th Cir. 2002).

*Faragher*, 524 U.S. at 787 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)). Actionable harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21. Title VII is not a "general civility code." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998). "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe and pervasive standard." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). "[C]omplaints premised on nothing more than rude treatment by co-workers, callous behavior by supervisors, or a routine difference of opinion and personality conflict with one's supervisors are not actionable under Title VII." *Id.*

When considering a plaintiff's claim that he was subjected to a hostile work environment, the Court must consider the totality of the circumstances. Relevant factors "may include the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "To be actionable, the conduct must create an objectively hostile or abusive work environment, and the victim must also perceive the environment to be abusive." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2007).

Here, Plaintiff has not shown that the alleged harassment was because of her race.[11] First, Plaintiff concedes that there is no direct evidence that any of the conduct was

---

[11]As previously stated, Plaintiff has clarified that she is bringing her hostile work environment claim only under § 1981, which outlaws race discrimination in the making and enforcement of private contracts. Accordingly, Plaintiff's allegations with respect to her hostile work environment claim relate only to race. Additionally, Plaintiff concedes that her claim is "limited to the time frame which she was supervised by Mr. Coletti from 2011 to her termination in 2012." [Doc. 46 at 32.]

19

motivated by racial animus. [Doc. 46 at 33.] Second, although Plaintiff was entitled to show that she was treated differently than similarly-situated white coworkers on the basis of race, she has not done so. Moreover, Plaintiff has failed to establish that the conduct was sufficiently severe or pervasive to be actionable. Accordingly, Plaintiff is entitled to summary judgment on this claim.

## RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion for summary judgment be GRANTED and Defendant's motion to dismiss be FOUND AS MOOT.

IT IS SO RECOMMENDED.

                          s/Jacquelyn D. Austin
                          United States Magistrate Judge

August 8, 2014
Greenville, South Carolina